Opinion issued October 28, 2004











In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00192-CV




GEORGE GOFFNEY JR.; JAMES BARNETT JR.; TAYLOR FARMER;
GERALD GOFFNEY; CLIFTON GRAY; JOSEPH GUILLORY; MARTHA
DOUGLAS, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF
ELIJAH HAGLER, DECEASED; CLARENCE HOBBS; LESLIE JENKINS;
OTIS JENKINS; LEON JENKINS; ROBERT JENKINS; MYRON
MCFATTER; and JAMES SIMMONS, Appellants

V.

JOHN M. O’QUINN; JOHN M. O’QUINN, P.C.; JOHN M. O’QUINN, P.C.
D/B/A O’QUINN & LAMINACK; JOHN M. O’QUINN LAW FIRM,
P.L.L.C.; JOHN M. O’QUINN & ASSOCIATES, P.L.L.C.; JOHN M.
O’QUINN & ASSOCIATES, L.L.P.; MICHAEL O’BRIEN; MICHAEL
O’BRIEN, P.C.; and MIKE O’BRIEN, P.C., Appellees




On Appeal from the 270th District Court
Harris County, Texas
Trial Court Cause No. 2000-56259




MEMORANDUM OPINION
          Appellants, George Goffney Jr., James Barnett Jr., Taylor Farmer, Gerald
Goffney, Clifton Gray, Joseph Guillory, Martha Douglas, as personal representative
of the estate of Elijah Hagler, deceased, Clarence Hobbs, Leslie Jenkins, Otis Jenkins,
Leon Jenkins, Robert Jenkins, Myron McFatter, and James Simmons, appeal from a
take-nothing judgment, rendered upon cross-motions for summary judgment, in favor
of appellees, their former attorneys. We determine (1) whether appellants waived
various challenges to the summary judgment rendered on certain of their claims for
breach of warranty, fraud, and deceptive-trade practices; (2) whether the trial court
properly rendered summary judgment against appellants’ claims for legal malpractice,
breach of fiduciary duty, and usury; and (3) whether the trial court abused its
discretion in denying certain of appellants’ motions to compel production. We affirm.
Background
          Appellants were former employees, or the personal representatives or family
members of those former employees, of certain companies in what was commonly
referred to as the “Brio site.” Appellants alleged that their exposure to various
chemicals at the Brio site injured them.
 
          Appellants engaged appellees to represent them in their personal-injury and
wrongful-death claims in a lawsuit against their former employers (“the Brio
litigation”). Each appellant signed a combined power of attorney and contingency
contract with appellees (“the contingency contracts”) in 1992. At the time that the
Brio litigation concluded, there were 406 plaintiffs, including 96 workers and 274
family members generally claiming secondary exposure for themselves or their
decedents. For all but the last few months of the litigation, appellees represented all
Brio plaintiffs. The Brio litigation continued until judgment was rendered upon the
parties’ settlement in December 2000.
          During the pendency of the Brio litigation, appellants became concerned about
or dissatisfied with appellees’ representation of them. Appellants alleged, among
other things, that appellees did not adequately keep them informed of the litigation’s
status, that appellee O’Quinn once called some of the appellants derogatory names,
that appellee O’Brien appeared “hung-over” at one or two meetings with the Brio
plaintiffs, and that appellees would not turn over some of appellants’ files, even after
appellants had discharged appellees. Appellees disputed these allegations.
          In late April 2000, while appellees were still representing appellants, the Brio
defendants offered to settle the suit for $6.5 million, provided that all plaintiffs
settled. The trial court appointed two special masters to determine how the settlement
funds and attorney expenses and fees could be equitably divided among all 406
plaintiffs. Appellee O’Brien recommended to the Brio plaintiffs that they accept the
settlement amounts determined by the special masters. The parties dispute whether
O’Brien and the special masters coerced appellants into signing agreements
preliminary to settlement or whether the special masters informed appellants of the
gross amount of attorneys’ expenses beforehand, but all appellants eventually signed
preliminary settlement agreements in early May 2000. The preliminary agreements
each stated that the special masters had fully and satisfactorily explained to the signer
the settlement, the monies to be withheld, and the amounts to be allocated to the
signer. The releases further stated that the signer “completely agree[d] with the way
the monies are being distributed and with the amount I am receiving” and that he
would sign all papers necessary for final settlement.
          Dissatisfied with their settlement amounts, appellants engaged their current
counsel to represent them in what remained of the Brio litigation. Appellants’ new
counsel filed objections to the special masters’ fees and to appellees’ expenses,
arguing, among other things, that the special masters had coerced appellants into
signing the preliminary agreements. The record of a hearing held in July 2000, at
which appellants’ objections were discussed, shows that appellees had given their
new counsel a partial itemization of appellees’ expenses, but not a complete one. At
that same hearing, the trial court advised appellants’ new counsel that, if appellants
did not agree to their individual settlement awards, the court could sever appellants
out and set their claims for trial, so that appellants could pursue their fee- and
expense-related complaints without preventing the other plaintiffs’ settlement. 
However, counsel for one Brio defendant reminded the parties and the court that
settlement was “contingent on all parties’ agreeing” to the settlement. Upon
consultation with their new counsel, and given the all-or-nothing nature of the
defendants’ settlement offer, appellants eventually agreed to withdraw their
objections to the special masters’ recommendations and to settle with the Brio
defendants based on the masters’ recommended awards. However, appellants’ new
counsel verbally reserved appellants’ rights to bring claims against appellees,
including a challenge seeking forfeiture of appellees’ fees, and to contest appellees’
expenses.
          The final judgment in the Brio action, agreed to by all parties in December
2000 while appellants had new counsel, approved the special masters’
recommendations, recited that all parties who had signed releases “fully understand
the nature and consequences of the settlement,” and contained the following
recitations relevant to appellants’ claims again appellees:
 
24.[It is] ORDERED, ADJUDGED and DECREED that the
Court has been made aware that there currently exists a dispute between
[appellants] and their prior counsel, [appellees], regarding fees; that the
Court finds that such dispute has no effect on Defendants . . . ; and this
Final Judgment discharges Defendants . . . from any further obligation
or liability of any kind to all plaintiffs . . . ; and it is further
 
25.ORDERED, ADJUDGED and DECREED that [appellants]
are listed on Exhibits B1, B2 and B3. have not been furnished with a
written statement describing the outcome of the matter and sharing the
remittance and method of determination. Plaintiffs in the first trial
group All Plaintiffs in this case have had an opportunity to go to trial,
and all [appellants] have announced to the Court through their [new]
attorneys . . . that they are satisfied with the [sic] entire settlement,
including expenses and interest incurred by [appellees] and each
Plaintiff’s individual awards as allocated by the Masters in Chancery;
and it is further
 
26.ORDERED, ADJUDGED and DECREED that the expenses
and interest incurred by [appellees] in the prosecution of this case are
submitted in the amount of $2,615,694.07 are approved as reasonable
and necessary to the prosecution of the case. [Appellants] agree that the
expenses and interest were reasonable and necessary to the prosecution
of the case and do not object to the reimbursement to [appellees] of
expenses and interest in the amount of $2,615,694.07; and it is further
 
27.ORDERED, ADJUDGED and DECREED that regardless
of the outcome of the dispute referenced in paragraphs 24-26 of this
Judgment, and even if [appellants], or their representatives, executors,
assigns, agents, heirs or beneficiaries receive no relief of any type
whatsoever as a result of that dispute either in this Court, in any other
action or elsewhere, this Judgment and the Releases of such [appellants],
. . . are and shall be final, valid and binding, and no further sums shall
be [sic] ever be due and owing by Defendants . . . to any plaintiff or their
representatives, executors, assigns, agents, heirs or beneficiaries . . . .

(Struck text appears in original; italics indicate interlineations.)
          In November 2002, appellants sued appellees based on appellees’ actions and
omissions related to the representation of appellants in the Brio litigation. By the
time of summary judgment, appellants had alleged the following causes of action: (1)
breach of fiduciary duty, (2) legal malpractice (negligence), (3) breach of the
“warranty of good lawyering,” (4) violations of the Texas Deceptive Trade
Practices–Consumer Protection Act (“DTPA”),


 (5) usury, (6) “fraud and
overreaching,” (7) gross negligence, and (8) rescission. As damages, appellants
sought (1) disgorgement of legal fees, (2) actual damages of the difference between
what appellants received and their claims’ alleged value, (3) damages for mental
anguish, (4) statutory penalties for usury, and (5) punitive damages, as well as pre-
and post-judgment interest, costs, and attorney’s fees.
          Appellees counterclaimed for (1) anticipatory breach of the contingency-fee
contracts based on appellants’ disputing the reasonableness and fairness of the fees
and expenses that appellees had incurred in the Brio litigation and (2) declaratory
judgment that the fees and expenses were fair and reasonable.
          Appellees then moved for both no-evidence and traditional summary judgment,
asserting grounds against appellants’ causes of action for legal malpractice, breach
of warranty, DTPA violations, usury, fraud, and fiduciary-duty breach.


 See Tex. R.
Civ. P. 166a(c), (i). Appellants moved for no-evidence and traditional summary
judgment on their claims for (1) usury, (2) “breaches of fiduciary duties of trust and
loyalties owing,” (3) fraud in the inducement, and (4) DTPA violations.


 The parties
also responded to each other’s opposing summary judgment motions.
          In January 2002, the trial court granted appellees’ summary judgment motion
without specifying grounds or indicating whether it was ruling under rule 166a(c) or
166a(i) and ordered appellants’ claims dismissed with prejudice. Appellees non-suited their counterclaims two days later. The next day, the trial court denied
appellants’ summary judgment motion. After appellees moved to modify the
judgment, the trial court signed a final judgment that effectively incorporated the
earlier summary judgment orders, dismissed appellants’ claims with prejudice,
dismissed appellees’ counterclaims without prejudice, and assessed costs against
appellants.
Standard of Review and Burden of Proof
          Summary judgment under rule 166a(c) is proper only when a movant
establishes that there is no genuine issue of material fact and that he is entitled to
judgment as a matter of law. Tex. R. Civ. P. 166a(c); Randall’s Food Mkts., Inc. v.
Johnson, 891 S.W.2d 640, 644 (Tex. 1995). A defendant is entitled to summary
judgment if the evidence disproves as a matter of law at least one element of each of
the plaintiff’s causes of action or if it conclusively establishes all elements of an
affirmative defense. Johnson, 891 S.W.2d at 644.
          A party may move for a “no-evidence” summary judgment under rule 166a(i)
“if there is no evidence of one or more essential elements of a claim or defense on
which an adverse party would have the burden of proof at trial.” Flameout Design
& Fabrication, Inc. v. Pennzoil Caspian Corp., 994 S.W.2d 830, 834 (Tex.
App.—Houston [1st Dist.] 1999, no pet.); Tex. R. Civ. P. 166a(i). A no-evidence
summary judgment is, therefore, like a directed verdict. Flameout, 994 S.W.2d at
834. “The trial court must grant the motion unless the nonmovant produces more
than a scintilla of evidence raising a genuine issue of material fact on the challenged
elements.” Id. 
          In reviewing either type of summary judgment, we indulge every reasonable
inference in favor of the non-movant, resolve any doubts in its favor, and take as true
all evidence favorable to it. Johnson, 891 S.W.2d at 644; Flameout Design, 994
S.W.2d at 834. When an order granting summary judgment does not specify the
grounds upon which the trial court ruled, we must affirm to the extent that any of the
summary judgment grounds is meritorious. Star-Telegram, Inc. v. Doe, 915 S.W.2d
471, 473 (Tex. 1995). 
Challenges to the Rendition of Summary Judgment for Appellees
          In issue two, appellants argue that the trial court erred in rendering summary
judgment for appellees on each of appellants’ claims.



A.      Breach of “Warranty of Good Lawyering”
          Appellees moved for summary judgment on appellants’ claim for breach of the
“warranty of good lawyering.” Appellants’ issue two states that the trial court erred
in rendering summary judgment against them on that claim. However, appellants
offer no discussion, argument, authority, or record citations in support. Accordingly,
we hold that appellants have failed to present this challenge properly for appellate
review. See Tex. R. App. P. 38.1(h); Stephens v. Dolcefino, 126 S.W.3d 120, 126 n.5
(Tex. App.—Houston [1st Dist.] 2003, pet. filed); F.S. New Prods., Inc. v. Strong
Indus., Inc., 129 S.W.3d 606, 630 (Tex. App.—Houston [1st Dist.] 2004, pet. filed).
          We overrule this challenge under appellants’ issue two.
B.      Legal Malpractice (Negligence)
          Also under issue two, appellants argue that the trial court erred in rendering
summary judgment against them on their claim for legal malpractice, i.e., negligence.
          An attorney malpractice action is based upon negligence and requires proof of
four elements: (1) that a duty existed; (2) that the defendant attorney breached that
duty; (3) that the breach was a proximate cause of the plaintiff’s damages; and (4) that
the plaintiff client was damaged. See Cosgrove v. Grimes, 774 S.W.2d 662, 665
(Tex. 1989); Greathouse v. McConnell, 982 S.W.2d 165, 172 (Tex. App.—Houston
[1st Dist.] 1998, pet. denied). “When a legal malpractice case arises from prior
litigation, the plaintiff has the burden to prove that, ‘but for’ the attorney’s breach of
duty, he or she would have prevailed on the underlying cause of action and would
have been entitled to judgment.” Greathouse, 982 S.W.2d at 172. This “but for”
causation aspect of the plaintiff’s burden is often referred to as the “suit-within-a-suit” requirement. See id. at 173.
          Among their other summary judgment grounds relevant to legal malpractice,
appellees asserted that appellants could produce no evidence to establish the suit-within-a-suit requirement. See Tex. R. Civ. P. 166a(i). Specifically, appellants
argued that no evidence showed that, had appellants’ cases been handled in the
manner that they proposed, appellants would have recovered more than they received
from the global settlement, particularly given that (1) the Texas Supreme Court
changed the criteria for proving toxic-tort causation during the pendency of the Brio
litigation;


 (2) many appellants had worked only for a few years for the Brio
defendants, and their exposure generally occurred in the 1960’s and 1970’s; (3) nine
appellants had smoked, some for many years; and (4) one appellant had used crack
cocaine extensively. Appellants responded below, as they do on appeal, only that
appellees did not adequately investigate two of appellants’ medical claims because
(1) appellees did not discover until the May settlement proceedings that appellant
Joseph Guillory had once been overcome by chemical fumes in a single incident at
a Brio defendant’s site (and then appellees’ representative had instructed Guillory not
to reveal the incident during settlement discussions because Guillory might be
“kicked off the case”) and (2) appellees did not obtain medical records of appellant
George Goffney Jr., which would have revealed that cysts had developed on his leg
while he had worked for a Brio defendant.



          Under the no-evidence aspect of appellees’ motion, appellants had the burden
to raise a material fact issue supporting the suit-within-a-suit element of their
malpractice claim. See Flameout Design, 994 S.W.2d at 834. We hold that the above
evidence did not carry that burden. First, that evidence says nothing about any
appellants other than Guillory and Goffney Jr. Second, causation in a legal-malpractice suit must generally be proved by expert testimony. See Alexander v.
Turtur & Assocs., Inc., 47 Tex. S. Ct. J. 992, 2004 WL 1908325, at *5 (Tex. Aug. 27,
2004); Onwuteaka v. Gill, 908 S.W.2d 276, 281 (Tex. App.—Houston [1st Dist.]
1995, no writ). Here, expert testimony on causation was required because whether
appellees’ failure to discover the noted matters for the two appellants affected the
decision to settle, the settlement values themselves, or the suits’ value had they been
tried is not something within a fact finder’s common knowledge. See Alexander,
2004 WL 1908325, at *5-6; Arce v. Burrow, 958 S.W.2d 239, 251-52 (Tex.
App.—Houston [14th Dist.] 1997), aff’d as modified on other grounds, 997 S.W.2d
229 (Tex. 1999). 
          Additionally, this was a toxic-tort suit, which, given the circumstances of this
case—exposure to various chemicals, sometimes for only a few years several decades
earlier, when appellants and the other nearly 400 plaintiffs had varying medical
conditions and different degrees of exposure, and when some appellants (including
Guillory) had smoked or used drugs—would have required the presentation of expert
causation testimony. See Coastal Tankships U.S.A., Inc. v. Anderson, 87 S.W.3d 591,
602-04 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (explaining why expert
testimony was required to prove causation in toxic-tort suit under review). Just as the
underlying suit require expert testimony on causation, expert testimony was also
required to show that, but for appellees’ alleged acts and omissions, appellants would
have received a settlement amount or jury verdict greater than that which they
actually received.
          Appellants’ failed to raise a material fact issue on the suit-within-a-suit element
of their legal malpractice (negligence) claims. Accordingly, we hold that the trial
court did not err in rendering summary judgment on these claims. Given our holding,
we need not reach appellants’ remaining arguments challenging other bases for the
summary judgment rendered on these claims.
          We overrule this challenge under issue two.
C.      Fraud
          Appellants next argue under issue two that the trial court erred in rendering
summary judgment against them on their fraud claim. Specifically, appellants argue
that “Appellees listed as charges and deducted from Appellants’ individual award
non-chargeable items . . . . These expenditures are not recoverable. Thus, Appellees
fraudulently deducted expenses, not recoverable, from Appellants’ individual
settlement awards.”
          This argument addresses a theory of fraud that appellants did not plead below
and against which appellees, understandably, did not move for summary judgment. 
Although appellants’ petition was somewhat confusing, we construe the fraud claim
asserted therein to have been only for fraud in the inducement: specifically, that
appellees had induced them into signing the contingency contracts. This is how
appellants construed their fraud claim in their own summary judgment motion, and
it is how appellees construed the claim both in their summary judgment motion and
in their response to appellants’ motion. On appeal, appellants offer no discussion,
argument, or authority concerning the summary judgment rendered on their
fraudulent-inducement claim, as pleaded. Therefore, appellants have failed to present
an appellate challenge to the rendition of summary judgment on that claim. See Tex.
R. App. P. 38.1(h); Stephens, 126 S.W.3d at 126 n.5; F.S. New Prods., Inc., 129
S.W.3d at 630.
          What appellants do argue on appeal relates to something that they asserted in
their summary judgment response. In their response below, appellants described their
fraud claim as being both for fraudulent inducement and for “accounting fraud . . .
and charging impermissible overhead and other non-chargeable client [sic]. In the
instant matter, Defendants charged Plaintiffs expenses . . . [that] are all precluded as
early as 1996 by the Fifth U.S. Court of Appeals.” Appellees noted in their summary
judgment reply that this new fraud allegation was merely an attempt by appellants “to
recast their claim that [appellees] incurred improper expenses . . . as a fraud claim.” 
However, appellees did not object to this recasting, and they addressed the
argument’s merits.
          We seriously question whether we can construe appellants’ inaccurate assertion
that their fraud claim was based on the charging of unreasonable expenses—when
that characterization was made only in a response to another party’s summary
judgment motion—as a new fraud claim that was tried by consent. See, e.g.,
Timothy Patton, Summary Judgments in Texas: Practice, Procedure and
Review § 3.06[1] (3rd ed. 2002) (“Consequently, if the motion is based on a ground
not pled by the movant (whether that ground is an affirmative defense or a claim for
affirmative relief), the non-movant must object to the lack of a supporting pleading;
otherwise, the ground will have been deemed to have been tried by consent.”)
(emphasis added). However, even if we did so, that new claim would fail. A cause
of action for fraud requires proof of a material misrepresentation. See In re
FirstMerit Bank, N.A., 52 S.W.3d 749, 758 (Tex. 2001). As appellees argued below
and reassert on appeal, the billing of expenses in the manner that appellants allege
was not a misrepresentation of anything, but was instead an accurate representation
of appellees’ claimed charges, albeit ones that appellants alleged should not have
been charged or recovered.
          We overrule this challenge under issue two.
D.      Breach of Fiduciary Duty
          Also under issue two, appellants argue that the trial court erred in rendering
summary judgment against them on their claims for breach of fiduciary duty and their
request for fee forfeiture.
          An attorney who commits a clear and serious breach of his fiduciary duty to his
client may be required to forfeit some or all of his fees. See Burrow v. Arce, 997
S.W.2d 229, 241 (Tex. 1999). A client need not prove actual damages in order to
obtain fee forfeiture for the breach of a fiduciary duty owed to the client because “[i]t
is the agent’s disloyalty, not any resulting harm, that violates the fiduciary
relationship and thus impairs the basis for compensation. . . . The main purpose of
forfeiture is not to compensate an injured principal . . . . Rather, the central purpose
of . . . forfeiture is to protect relationships of trust by discouraging agents’ disloyalty.” 
Id. at 238, 240. Nonetheless, automatic and complete forfeiture is not necessary to
advance this purpose. See id. at 241. Instead, fee forfeiture must fit the
circumstances presented. See id.
          The remedy of fee forfeiture is restricted to clear and serious violations of
fiduciary duty. See id. at 241. “‘A violation is clear if a reasonable lawyer, knowing
the relevant facts and law reasonably accessible to the lawyer, would have known that
the conduct was wrongful.’” Id. (quoting the proposed Restatement (Third) of
the Law Governing Lawyers § 49 cmt. d (Proposed Final Draft No. 1, 1996)). 
Non-exclusive factors to be considered in determining whether a violation is clear
and serious, whether forfeiture of any fee should be required, and what amount of fee
should be forfeited include (1) the gravity and timing of the violation, (2) its
wilfulness, (3) its effect on the lawyer’s work for the client, (4) any other threatened
or actual harm to the client, (5) the adequacy of other remedies, and, to be given great
weight, (6) the public interest in maintaining the integrity of attorney-client
relationships. Id. at 243-44. 
          Fee forfeiture is an equitable remedy similar to a constructive trust. See id. at
238, 241, 245. When contested fact issues must be resolved before equitable relief
can be determined, a party is entitled to have a jury resolve those fact issues. See id.
at 245. Accordingly, fact disputes concerning factors such as, for example, whether
and when complained-of conduct occurred, the attorney’s mental state at the time, the
value of the attorney’s services, and the existence and amount of harm to the client
may present a jury issue. See id. at 245-46. Once any necessary factual disputes have
been resolved, however, the court must determine, based on the factors described
above, whether the attorney committed a clear and serious breach of his duty to his
client and whether and to what extent attorney’s fees should be forfeited. See id. at
246.
          We may consider on appeal five of appellants’ allegations as to how appellees
breached their fiduciary duties:



 
1.by allegedly forcing appellants into accepting a grossly
inadequate settlement against their wishes;



 
2.by allegedly inducing appellants into hiring appellees by
promising them a $1 million recovery each;



 
3.by allegedly failing to furnish appellants their files upon request
before final judgment in the Brio litigation;



 
4.by allegedly “fail[ing] to adequately communicate with
[appellants]”;


 and
 
5.by allegedly failing “to fully investigate [appellants’] claims
. . . .”




Based upon these allegations, appellants sought forfeiture of most or all of the legal
fees that appellees had incurred in the Brio litigation. 
          Appellees’ summary judgment motion, apparently asserted under rule 166a(c),
expressly addressed only the first two breach-of-fiduciary-duty allegations. However,
appellees’ motion also asserted as a catch-all ground that, even taking as true
appellants’ summary judgment evidence relating to these factual allegations,
appellants could not establish a clear and serious breach of fiduciary duty that would
justify a fee forfeiture. Specifically, appellees argued:
[F]ee forfeiture is an equitable remedy, the “expediency, necessity, [and]
propriety” of which are all questions for the Court. The summary
judgment record establishes that, on the advice of independent counsel,
[appellants] elected voluntarily to accept the settlement about which
they now complain and attempt to obtain more money for their claims
by taking away attorneys’ fees to which [appellees] are contractually
entitled rather than by trying their claims in the [Brio litigation] as they
were given the opportunity to do through their new counsel. Unlike the
plaintiffs in [Burrow v.] Arce, [appellees] did not obtain for [appellants]
in this case a settlement that was merely fair and reasonable from an
objective standpoint. [Appellees] obtained for [appellants] a settlement
that, by [appellants’] own judicial admission on the advice of
independent counsel, is fully satisfactory to [appellants]. Fee forfeiture
in such a circumstance would not achieve equity.
(Citations omitted; emphasis in original.) 
          Appellees raised this summary judgment ground against all breach-of-fiduciary-duty claims, and the trial court rendered summary judgment on all of those
claims without specifying the grounds for its ruling. On appeal, appellants do not
challenge this ground for summary judgment.


 Because appellants have not
challenged every summary judgment ground asserted against their breach-of-fiduciary-duty claims, we must affirm the summary judgment to the extent that it
adjudicated each of those claims. See Ellis v. Prescission Engine Rebuilders, Inc., 68
S.W.3d 894, 898 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (“If summary
judgment may have been rendered, properly or improperly, on a ground not
challenged, the judgment must be affirmed.”); see also Walling v. Metcalfe, 863
S.W.2d 56, 58 (Tex. 1993). This basis alone supports overruling this portion of
appellants’ issue two.
          Additionally, with respect to each of their five allegations of breach of
fiduciary duty, appellants have not explained how—viewing the evidence in the most
favorable light to appellants and thus assuming that appellees breached their fiduciary
duties as appellants allege—the trial court erred in not declaring any fees forfeited
under the six Burrow factors.
          Furthermore, with respect to appellants’ allegation that appellees coerced them
into settlement, we note that appellees’ summary judgment motion also asserted that
any allegation that they forced appellants to settle by refusing to try appellants’ cases
was “an improper attempt to split a legal malpractice claim and therefore fails as a
matter of law.” As noted above, the trial court rendered summary judgment on the
corresponding beach-of-fiduciary-duty allegation without specifying grounds. On
appeal, appellants do not challenge appellees’ quoted ground for summary judgment. 
Accordingly, we may affirm the summary judgment’s rendition on appellants’
“coercion” breach-of-fiduciary-duty allegation for this reason, as well. See Ellis, 68
S.W.3d at 898. 
          Moreover, with respect to the same coercion allegation, appellees’ evidence
proved conclusively that appellants settled on the independent advice of their new
counsel. At the settlement hearing, they withdrew their objections to the settlement
amounts and entered into an agreed judgment, after having been advised at the
settlement hearing that they could instead take their claims to trial,


 which recited
that they were “satisfied with the . . . individual awards as allocated by the Masters
in Chancery.” These recitations constituted judicial admissions that appellants
entered the settlement voluntarily, and the admissions were made upon the advice of
their new counsel. Finally, the agreed final judgment recited that each Brio plaintiff
“fully understand[s] the nature and consequences of the settlement.” For these
reasons, the summary judgment evidence established, as a matter of law, that
appellees did not coerce appellants into settling anything. Accordingly, the trial court
correctly denied the request for fee forfeiture based on appellants’ coercion
allegation.
We overrule these challenges under issue two.
 
E.      DTPA
          Appellants also argue under issue two that the trial court erred in rendering
summary judgment against them on their claims for violations of the DTPA.
          Appellants pleaded that appellees (1) took unconscionable actions or courses
of action that could not be characterized as advice, judgment, or opinion; (2) breached
express warranties that could not be characterized as advice, judgment, or opinion;
(3) made express representations of material fact in ways that could not be
characterized as advice, judgment, or opinion; and (4) failed to disclose information
concerning goods or services, which information was known at the time of the
transaction, and with the intention of inducing appellants into a transaction into which
they would not have entered had the information been disclosed.


 See Tex. Bus. &
Com. Code Ann. § 17.49(c)(1)-(4) (Vernon 2002 & Supp. 2004-2005); see also id.
§ 17.46(b)(24) (Vernon Supp. 2004-2005).
          Appellees’ summary judgment motion alleged that DTPA section 17.49(c)’s
professional-service exclusion, added in 1995, applied and precluded appellants’
DTPA claims. See Act of May 19, 1995, 74th Leg., R.S., ch. 414, § 20(b), 1995 Tex.
Gen. Laws 2988, 3004. Alternatively, appellees asserted that appellants’ DTPA
claims constituted an improper attempt merely to recast their malpractice claim. See
Greathouse, 982 S.W.2d at 172 (noting that plaintiff’s DTPA cause of action against
former attorney was impermissible attempt to “fracture” legal-malpractice claim into
another cause of action). Appellants responded by implying that section 17.49(c)’s
professional-service exclusion did not apply to appellees’ conduct occurring before
1995 and that, if and to the extent that section 17.49(c)’s exclusion applied, appellants
could still sue for appellees’ unconscionable acts, which represented an exception to
section 17.49(c)’s professional-services exclusion. See Tex. Bus. & Com. Code
Ann. § 17.49(c)(3) (establishing exception to professional-service exclusion for “an
unconscionable action or course of action that cannot be characterized as advice,
judgment, or opinion . . . .”). Appellees replied that (1) to the extent that appellants’
DTPA claims were based on appellees’ post-1995 actions, the claims were barred
under section 17.49(c) because that section’s unconscionability exception did not
apply and (2) to the extent that the DTPA claims were based on appellees’ pre-1995
actions, the claims (like all of appellants’ DTPA allegations) still constituted an
improper attempt merely to recast appellants’ malpractice claim as something else.
          Although their brief is somewhat unclear, we understand appellants to argue
on appeal solely that appellees’ conduct was unconscionable, and thus actionable,
under section 17.49(c)(3).


 The limited nature of appellants’ challenge has two
consequences. First, appellants’ petition alleged that appellees had committed
wrongs fitting the four exceptions to the DTPA’s professional-service exclusion, only
one of which was unconscionable conduct. See id. § 17.49(c)(1)-(4); see also id. §
17.46(b)(24). Because appellants offer no argument or authority concerning why
summary judgment could not have been rendered on the summary judgment grounds
asserted, with the exception of their unconscionable-conduct DTPA claim, appellants
have waived any challenge to the rendering of judgment on all DTPA claims other
than that based on unconscionable conduct. See Tex. R. App. P. 38.1(h); Stephens,
126 S.W.3d at 126 n.5; F.S. New Prods., Inc., 129 S.W.3d at 630; see also Garcia v.
Nat’l Eligibility Express, Inc., 4 S.W.3d 887, 888 (Tex. App.—Houston [1st Dist.]
1999, no pet.) (affirming portion of summary judgment rendered against claim about
which party did not complain on appeal). 
          Second, appellants do not challenge on appeal appellees’ alternative summary
judgment ground that appellants’ DTPA claims constituted merely an improper
attempt to recast or to “fracture” their malpractice claim. See Greathouse, 982
S.W.2d at 172. Regardless of the merit of that summary judgment ground, we cannot
reverse the summary judgment disposing of appellants’ remaining DTPA claim
because appellants have not assigned error to every ground asserted against that
claim. See Ellis, 68 S.W.3d at 894, 898; Armbruster v. Mem’l Southwest Hosp., 857
S.W.2d 938, 941 (Tex. App.—Houston [1st Dist.] 1993, no writ).
          Accordingly, we overrule this challenge under issue two.
F.      Usury
          In another portion of issue two, appellants argue that the trial court erred in
rendering summary judgment against them on their usury claim.
 
          Appellants hired appellees on a contingency-fee basis. Appellees took out
commercial bank loans to pay for the expenses and costs related to the Brio litigation. 
The contingency contracts allowed for the reasonable interest charged on those loans
to be deducted from any settlement or recovery that appellants obtained.



          Appellants argue that (1) the contingency contracts are loans, (2) they are
usurious on their face, and (3) appellees passed along to appellants a rate of interest
higher than the constitutional limit of 6%. See Tex. Const. art. XVI, § 11. 
Appellees asserted in their summary judgment motion that, among other things, the
contingency contracts are neither loans nor usurious because they do not create an
absolute obligation for repayment.
          “The essential elements of a usurious transaction are (1) a loan of money, (2)
an absolute obligation that the principal be repaid, and (3) the exaction of a greater
compensation than allowed by law for the use of the money by the borrower.” Holley
v. Watts, 629 S.W.2d 694, 696 (Tex. 1982). The Finance Code defines “loan” as “an
advance of money that is made to or on behalf of an obligor, the principal amount of
which the obligor has an obligation to pay the creditor.” Tex. Fin. Code Ann. §
301.002(a)(10) (Vernon Supp. 2004-2005). If a transaction is missing any of these
elements, it cannot be usurious. See Holley, 629 S.W.2d at 696. Thus, if the
contingency contracts did not create an absolute obligation to repay, appellants’ usury
claim fails.
          The contingency contracts were not loans because appellees’ reimbursement
under them was, necessarily, contingent upon a recovery or settlement. “A factor that
courts consider when determining usury is whether repayment was based on a
contingency.” Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994). “This factor
is important because it helps a court in determining whether a transaction was a loan”
or was, instead, some other kind of transaction. Id.; see Bray v. McNeely, 682 S.W.2d
615, 619 (Tex. App.—Houston [1st Dist.] 1984, no writ). The contracts’ contingent
nature shows that they were not loans because appellees were not guaranteed
reimbursement for the amounts that appellees had borrowed to prosecute appellants’
cases, just as appellees were not guaranteed reimbursement for any other costs, fees,
or expenses if their clients did not recover.


 Rather, the contingency contracts were
agreements for the rendition of legal services that allowed for the collection of
attorney’s fees and for the reimbursement of the attorneys’ costs and expenses upon
recovery or settlement. Alternatively, even if the contingency contracts could
somehow have been construed as loans, they would not have been usurious because
appellants had no absolute obligation to repay the principal amounts that appellees
had borrowed. See Holley, 629 S.W.2d at 696; Pansy Oil Co. v. Fed. Oil Co., 91
S.W.2d 453, 457 (Tex. Civ. App.—Texarkana 1936, writ ref’d); see also Bray, 682
S.W.2d at 619; Beavers v. Taylor, 434 S.W.2d 230, 231-32 (Tex. Civ. App.—Waco
1968, writ ref’d n.r.e.). Simply put, if appellees recovered nothing for appellants,
then appellants had no obligation to reimburse appellees for the principle amounts of
appellees’ loans. Accordingly, whatever the pass-through provisions of the
contingency contracts were, and regardless of the reasonableness of the charges
reimbursed under those provisions (a matter that we do not decide), the provisions
were not usurious.
          Based on our holding, we need not reach appellants’ remaining arguments
concerning their usury claims.
          We overrule this portion of issue two.
Motions to Compel Production
          In issue one, appellants claim that the trial court erred in “denying Appellants’
timely filed Motions to Compel Production” concerning (1) their “papers and
property,” apparently referring to their client files from the Brio litigation; (2) a
promissory note, dated February 3, 2000, between appellees and their lender; and (3)
each appellant’s “individual and aggregate expert reports, documents and files and
medical records of causation and epidemiological studies, etc.” Appellants’ sole
argument concerning the harm allegedly resulting from the denial of their motions to
compel is as follows:
 
The documents requested by the Appellants . . . were essential to
Appellants’ case from the May 2001 hiring of present counsel. Absent
the documents requested and in particular testifying expert reports and
underlying data, the February 3, 2000 $2.2 million promissory note
executed by Appellee O’Quinn, Appellants were prepared [sic] to either
defend against a Motion for Summary Judgment, and/or successfully
bring their action to trial in 2000.
          “Our procedural rules define the general scope of discovery as any unprivileged
information that is relevant to the subject of the action, even if it would be
inadmissible at trial, as long as the information sought is ‘reasonably calculated to
lead to the discovery of admissible evidence.’” In re CSX Corp., 124 S.W.3d 149,
152 (Tex. 2003) (quoting Tex. R. Civ. P. 192.3(a)). “A party may obtain discovery
of the existence, description, nature, custody, condition, location, and contents of
documents and tangible things . . . that constitute or contain matters relevant to the
subject matter of the action.” Tex. R. Civ. P. 192.3(b).
          “Generally, the scope of discovery is within the trial court’s discretion.” In re
CSX Corp., 124 S.W.3d at 152. “Abuse of discretion occurs when the trial court
‘reaches a decision so arbitrary and unreasonable as to amount to a clear and
prejudicial error of law.’” In re Bass, 113 S.W.3d 735, 738 (Tex. 2003) (quoting
Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 1992)). If the trial court abuses its
discretion in a discovery ruling, an appellant must still show harm on appeal. See
Wigfall v. Tex. Dep’t of Criminal Justice, 137 S.W.3d 268, 274 (Tex. App.—Houston
[1st Dist.] 2004, no pet.) (holding discovery error harmless); K.C. Roofing Co. v.
Abundis, 940 S.W.2d 375, 380 (Tex. App.—San Antonio 1997, writ denied) (holding
error in “freezing” discovery harmless). Harmful error is error that “probably caused
the rendition of an improper judgment” or “probably prevented the appellant from
properly presenting the case to the court of appeals.” Tex. R. App. P. 44.1(a).
          With respect to appellants’ complaint about the alleged refusal to compel
production of the promissory note, we note that appellees produced for the trial court
an affidavit averring that the funds borrowed under that note were in no way related
to the Brio litigation. The trial court would not have abused its discretion in denying
discovery of this note if the court found the note totally irrelevant for this reason. See
Tex. R. Civ. P. 192.3(b); In re CSX Corp., 124 S.W.3d at 152 (both requiring
relevancy to action’s subject matter). Moreover, whether appellants obtained
appellees’ February 2000 promissory note is immaterial, and thus harmless, because
we have already held that appellants’ usury claim—the only claim to which the note
related—fails for independent reasons.



 
          With respect to appellants’ complaint about the alleged refusal to compel
production of the Brio experts’ information, we note that appellants’ related request
for production was untimely. Appellants’ fifth supplemental request for production
was the first that expressly requested materials relating to the experts in the Brio
litigation.


 That request was served on November 3, 2001. The only docket-control
order in the record provided that the discovery limitations in Rule of Civil Procedure
190.3 applied. See Tex. R. Civ. P. 190.3. Rule 190.3 provides that “[a]ll discovery
. . . be conducted during the discovery period, which begins when suit is filed and
continues until: . . . the earlier of: (i) 30 days before the date set for trial, or (ii) nine
months after the earlier of the date of the first oral deposition or the due date of the
first response to written discovery.” Tex. R. Civ. P. 190.3(b)(1)(B). The docket-control order further required that, absent the parties’ agreement to the contrary, the
parties serve their discovery requests sufficiently far in advance so that the deadline
for the other party to respond fell within the discovery period, not afterwards. See
Tex. R. Civ. P. 196.1(a) (requiring requests for production to be filed no later than
30 days before end of discovery period). 
          In this case, even though the trial date was reset from December 2001 until
sometime in 2002, the discovery period was not determined by the date of the trial’s
setting, but by an earlier date. See Tex. R. Civ. P. 190.3(b)(1)(B). That earlier date
was the due date of appellees’ responses to appellants’ first request for production. 
See id. Although the record does not show the exact due date of responses to
appellants’ first request for production, the record does contain appellees’ responses. 
Those responses were served on January 18, 2001. Nine months after the date that
appellees responded was mid-October 2001. Appellants’ request for production of
the Brio experts’ information was not served until November 3, 2001, and the record
contains no motion by appellants asking for leave to file the request late. The trial
court would not have abused its discretion had it denied appellants’ fifth
supplemental motion to compel because the request for production that appellants
sought to compel was untimely.
          Furthermore, the record contains no ruling on appellant’s motion to compel
responses to their fifth supplemental request for production. The parties’ filings
pertinent to the fifth supplemental request for production and appellants’ motion to
compel suggest that the trial court made an oral ruling of some type concerning the
motion to compel at a hearing on that motion.


 However, the parties’ statements
concerning that ruling cannot be corroborated in the record because we have no
reporter’s record of that hearing and nothing shows that that hearing was even
recorded. Additionally, the record contains no signed order on the particular motion
to compel. And although the parties and the court discussed the motion to compel at
a hearing held after the court had entered its summary judgment orders, the trial court
still did not rule on appellant’s pertinent motion to compel at that hearing. We cannot
review the propriety of an alleged ruling on a motion when the record does not show
the ruling. See Tex. R. App. P. 33.1(a)(2). 
          Finally, the motion to compel became moot once the trial court had rendered
summary judgment. We have already held that the trial court properly rendered
summary judgment on appellants’ claims for legal malpractice (negligence), DTPA
violations, and breach of the “warranty of good lawyering” for reasons independent
of and unrelated to discovery of the Brio experts’ materials.
          Regarding appellants’ complaint about the alleged refusal to compel production
of their “papers and property,” we first note that appellants do not specify to which
motion to compel they refer. We have nonetheless found two motions of appellants’
that might relate to appellants’ complaint. Appellants’ first motion to compel
requested copies of their contingency contracts. Appellees’ later filings on this topic
repeatedly asserted that they had given appellants copies of the contingency contracts,
and it is possible that, for that reason, the trial court denied the motion to compel
relating to these documents.


 In any event, by the time that appellants filed their
summary judgment motion and responses, they had these documents. Accordingly,
any possible error was harmless. See Tex. R. App. P. 44.1(a). We also note that, in
an affidavit supporting appellants’ summary judgment motion, their counsel averred
that appellees had, by the first half of 2001, produced appellants’ client files except
for the Brio experts’ materials. Appellants filed their first summary judgment
pleading in November 2001, months after the time that their counsel’s affidavit avers
that he had been provided with the client files. This is another reason that, if there
was any error, it was harmless. See Tex. R. App. P. 44.1(a).
          The only other motion of appellants’ mentioning their “papers and property”
was their “motion for contempt” to enforce their fourth motion to compel production. 
That motion for contempt alleged that appellees had not produced appellants’ “papers
and property,” but the discussion in support related to the Brio experts’ materials.


 
We have already held that the trial court either did not err in refusing to compel
production of those items or, alternatively, that any error was harmless.
          We overrule appellant’s issue one.

Conclusion
          We affirm the judgment of the trial court.
 
                                                                        Tim Taft
                                                                        Justice

Panel consists of Justices Taft, Keyes, and Hanks.