Opinion to: SJR TGT SN TJ EVK ERA GCH LCH JB









Opinion Issued August 10,
2006

 

 

 

 














 

     

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



NO. 01-04-01189-CV

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 



Betty M. Cartmell,
PH.D., Appellant

 

V.

 

Rainbow Healthcare Services, P.A., Appellee

 

 



On Appeal from the 55th District Court

Harris County, Texas

Trial Court Cause No. 2003-69268

 








 

 



MEMORANDUM OPINION

          Betty
Cartmell, Ph.D. sued Rainbow Healthcare Services, P.A. for breach of contract
and deceptive trade practices, arising from Rainbow’s alleged failure to bill Cartmell’s
patients and their insurers or to remit those payments to Cartmell.  The trial court granted Rainbow’s motion for
summary judgment, from which Cartmell appeals. 
We agree with the trial court that Cartmell failed to raise a genuine
issue of fact as to an element of each of her causes of action, and therefore we
affirm.

Facts

          From
1999 through 2002, Cartmell, a clinical psychologist, saw patients at Rainbow’s
office facility.  Cartmell paid a monthly
fee, ranging from $300 to $550, in exchange for office space, supplies, and
billing services.  Cartmell alleges that she
and Rainbow orally agreed that Rainbow would bill her patients and their
insurers and pass all payments received to Cartmell directly and in full.  Cartmell became concerned that the payments
she received from Rainbow were inadequate. 
In March 2000 she discussed the issue with Rainbow’s administrator, C.J.
Pincheck.  As she described it in her
deposition:  

I was grossly underpaid.  It was like I had only received 50%,
approximately, of what I would have expected at that point in time.  So, I knew on a gross basis . . . .  I knew about how many patients I saw every
week.  I also know the lag in
insurance.  I knew what I should have been
getting, and it wasn’t—it wasn’t happening.

 

          Cartmell
approached Rainbow about her billing concerns again in October 2000, and sent
it a letter in April 2001.  Cartmell
alleged in the letter that she saw Rainbow shred documents shortly after she
expressed her concerns about billing, and these documents could have confirmed her
billing allegations. Pincheck responded to Cartmell in a letter in May 2001,
asking Cartmell to provide Rainbow specific billing questions.  In the letter, Pincheck provided details of
particular accounts and explained some of the disparities between Cartmell’s actual
collections and the amounts Cartmell charged her patients for office visits.  

Cartmell attempted to discuss the
problem with Dr. Lawrence Root, the owner of Rainbow, in June 2001, but he
became angry.  Cartmell remained at
Rainbow because she felt attached to some of her patients, but she reduced her
hours, and eventually left in October 2002.

Cartmell sued Rainbow in December
2003 for breach of contract and deceptive trade practices.  After completion of discovery, Rainbow moved
for a traditional and a no-evidence summary judgment, contending that (1) the oral
agreement Cartmell alleges is an unenforceable guaranty agreement; (2) Cartmell
failed to mitigate her damages; (3) Cartmell’s damages models constitute no
evidence of damages; (4) Cartmell’s DTPA claims are barred by limitations, and (5)
Cartmell fails to raise a fact issue with respect to each element of her causes
of action, including the breach element of her contract claim and the deceptive
act element of her DTPA claim.  Rainbow
included excerpts from selected patient files, including two explanation of
benefits (“EOBs”) transmittals from insurance carriers that reported either a
denial of coverage for office visit charges or application of the charges to
the patient’s deductible.

Cartmell responded that she does not
allege a guaranty agreement, her damages models show a discrepancy between the
amount she expected to receive from patients and insurers and the amount she
actually received, and fact issues exist on each element of each of her causes
of action.  Cartmell included a transcript
of her deposition, the April letter she wrote to Pincheck, several letters from
Pincheck, a letter to Dr. Root, and her damages models as summary judgment
evidence.

Standard of Review

          We
review the trial court’s ruling on a summary judgment motion de novo.  Provident Life & Accident Ins. Co. v.
Knott, 128 S.W.3d 211, 215 (Tex. 2003). 
We view the evidence in a light most favorable to the non-movant, making
all reasonable inferences and resolving all doubts in the non-movant’s
favor.  Rhone-Poulenc, Inc. v. Steel,
997 S.W.2d 217, 222 (Tex. 1999).  Because
the summary judgment order does not specify the ground or grounds on which the
trial court relied for its ruling, we affirm the summary judgment if any of the summary judgment
grounds is meritorious.  FM Props.
Operating Co. v. City of Austin, 22 S.W.3d 868, 872–73 (Tex. 2000).

          Here,
Rainbow sought either a traditional or a no-evidence summary judgment.  The movant for a traditional summary judgment
has the burden of showing that there is no genuine issue of material fact and
that it is entitled to judgment as a matter of law.  Tex.
R. Civ. P. 166a(c); KPMG Peat
Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999).  Once the movant shows it is entitled to
judgment as a matter of law, the burden shifts to the non-movant to present
evidence raising a fact issue to defeat the motion for summary judgment.  Haight v. Savoy Apartments, 814 S.W.2d
849, 851 (Tex. App.—Houston [1st Dist.] 1991, writ denied).   

          In
a no-evidence summary judgment, the movant represents that no evidence exists
as to one or more essential elements of the non-movant’s claims, upon which the
non-movant would have the burden of proof at trial.  Tex.
R. Civ. P. 166a(i); Jackson v.
Fiesta Mart, 979 S.W.2d 68, 70–71 (Tex. App.—Austin 1998, no pet.).   On
review, we ascertain whether the non-movant produced more than a scintilla of
probative evidence to raise a genuine issue of material fact.  Id.  More than a scintilla of evidence exists if
the evidence “rises to a level that would enable reasonable and fair-minded
people to differ in their conclusions.”  King
Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003).  If the evidence does no more than create a
mere surmise or suspicion of fact, less than a scintilla of evidence
exists.  Merrell Dow Pharms., Inc. v.
Havner, 953 S.W.2d 706, 711 (Tex. 1997). 
Although the non-moving party is not required to marshal its proof, it
must present evidence that raises a genuine fact issue on each of the
challenged elements.  Tex. R. Civ. P. 166a(i).  The fact that evidence is attached to a
motion requesting summary judgment on both traditional and no-evidence grounds does
not foreclose a party from also asserting that there is, in fact, no evidence with regard to a
particular element.  Binur v. Jacobo,
135 S.W.3d 646, 651 (Tex. 2004).  Rather,
if a no-evidence motion attaches evidence, we examine that evidence to
determine whether it creates a fact question. 
Id.

Breach of Contract

          Cartmell
contends the trial court improperly granted summary judgment because she
presented more than a scintilla of evidence on each element of her breach of
contract cause of action.  The elements
of breach of contract include (1) the existence of a valid contract, (2)
performance or tendered performance by the plaintiff; (3) breach of the
contract by the defendant; and (4) damages sustained by the plaintiff as a
result of the breach.  Eckland Consultants, Inc. v. Ryder,
Stilwell Inc., 176 S.W.3d 80, 86 (Tex.
App.—Houston [1st Dist.] 2004, no pet.).  A breach of contract occurs when a
party fails to perform an act that it has expressly or impliedly promised to
perform.  Methodist Hosps. of Dallas
v. Corporate Communicators, Inc., 806 S.W.2d 879, 882 (Tex. App.—Dallas
1991, writ denied).  Here, Cartmell alleges that Rainbow breached an oral contract
by failing to bill, collect, and remit payments to her.  Cartmell contends that a deficiency between the
amount Rainbow remitted to her and the amount she expected to receive for her
services raises a fact issue that Rainbow breached its agreement by failing to properly
bill and collect payment from patients and insurance carriers.[1]  

As evidence of breach by Rainbow,
Cartmell submitted a spreadsheet to the trial court.  The spreadsheet shows each patient’s name, the
amount Cartmell expected to receive for services rendered to that patient, and the
amount of payment she had in fact received. 
Evidence of a difference between the amount Cartmell expected to receive
for her services and the amount she actually received, however, is not evidence
of breach of an agreement to collect and remit payment. Such evidence assumes
that the third party payors—insurance companies and patients—paid Cartmell’s
charges in line with her expectations.  Cartmell
presents no other evidence to suggest that Rainbow failed to bill her patients,
or that it collected any payments that it failed to remit to her.  In other words, Cartmell offers no evidence from
patients or third party payors that (1) they had not been billed for Cartmell’s
services; or (2) they were billed and had paid amounts toward those bills
greater than the amounts Rainbow remitted to Cartmell.  Though the trial court ordered Rainbow to
produce all of its billing records, none of these are attached as summary
judgment evidence to raise a fact issue that the reason Cartmell’s payments
from insurers and patients fell below her expectations was because Rainbow
failed to properly bill or remit payments received.

Rainbow presented summary judgment
evidence that it had unsuccessfully attempted to collect on at least three of
the accounts listed on Cartmell’s damages model.  Rainbow sent Cartmell a letter in May 2001
detailing some of her accounts and explaining that her alleged payment
deficiencies were the result not of Rainbow’s failure to bill, but of Medicare
refusing to pay all or part of the claims it submitted or taking a long time to
pay claims.  Cartmell acknowledged in her
deposition that there were other reasons besides breach by Rainbow—such as a
patient’s refusal or inability to pay, patient deductibles that must be met, and
negotiated insurance rates or reduced Medicare rates—all of which could explain
the difference between her actual and expected collections.  Cartmell offered no records from Rainbow to
show billing that was not done, or any evidence or testimony from patients or
insurance companies that they had never received her bills or had paid Rainbow
more than the amounts Rainbow remitted to Cartmell. [2]

Cartmell’s deposition testimony
exemplifies the gap between the evidence Cartmell submitted and her claim of
breach.  After acknowledging that the
amounts paid by Medicare, Medicaid, insurers, and patients for office visits
would be substantially less than the amounts charged for various reasons—among
these, lack of ability to pay, lack of coverage, reduced benefits, or
negotiated allowables—Cartmell could not testify as to her method for
determining the amount she “expected to receive” pursuant to her agreement with
Rainbow.  In describing the expected
amount for one entry that forms the basis of the summary judgment evidence, she
stated, “[I]t’s a best guess as to what her insurance might reimburse . . .
.  [S]o, this is reasonably close to what
her insurance would most likely pay.” 
Later, she reiterated that she did not know the precise amount that
would be paid by patients and third parties but instead made a “best guess,”
and could not re-create the process for establishing the amounts Rainbow owed.  We hold the fact that the amounts Cartmell
received did not meet her general expectations does not constitute evidence of
a breach of contract, unless the contract obligates the party in alleged breach
to provide an amount that meets those expectations.  See Prime Prods., Inc. v. S.S.I. Plastics,
97 S.W.3d 631, 637 (Tex. App.—Houston [1st Dist.] 2002, pet. denied)
(affirming summary judgment on breach element where summary judgment evidence
lacked facts to support allegation that performance provided was inadequate
other than general conclusion that breaching party failed to provide “full and
adequate” protection for parties’ “business interests”).

Moreover, as Rainbow observes, if
Cartmell alleges breach of a promise to collect monies equal to her expectations
or else be liable for the difference, regardless of the true amounts remitted
by insurance carriers and patients, then the alleged breach is of a surety
agreement, not merely of failing to bill and collect payments made by third
parties.  See Tex. Bus. & Com. Code Ann. § 26.01(b)(2)
(Vernon 2002) (“a promise by one person to answer for the debt, default, or
miscarriage of another person” must be in writing); Gulf Liquid Fertilizer
Co. v. Titus, 354 S.W.2d 378, 382 (Tex. 1962) (observing that surety
agreement imposes secondary liability for debt of another).   If Cartmell
contends that Rainbow agreed to pay her one hundred percent of the amounts she expected
to receive, rather than actual collections, then the summary judgment evidence
she offered as to the difference between the amounts she expected to receive and
the amounts actually remitted to her would be evidence of breach.  In such a case, however, Cartmell’s claim is barred
by the statute of frauds, which requires surety agreements to be in writing.  See Tex.
Bus. & Com. Code Ann. § 26.01(b)(2). 

If, in contrast, and as Cartmell
contends on appeal, she seeks damages resulting only from Rainbow’s failure to
bill patients and/or remit those payments actually made by patients or third
parties, then she has the burden to overcome Rainbow’s no-evidence challenge by
presenting evidence that Rainbow actually failed to bill patients or failed to
remit payments, not merely provide the difference between amounts she expected
to receive and the amounts she actually received.  Because she has failed to do so, we hold that
Cartmell did not raise a fact issue to defeat Rainbow’s no-evidence summary
judgment motion, and the trial court properly granted summary judgment on this
ground.  Accordingly, we need not address
Rainbow’s other grounds for summary judgment. 
See FM Props. Operating Co., 22 S.W.3d at 872–73.

DTPA

          Cartmell
contends the trial court improperly granted summary judgment on her DTPA claim
because her allegation that Rainbow claimed to have performed services that it
did not actually perform is sufficient evidence that Rainbow committed
deceptive acts in violation of the DTPA. 
See Tex. Bus. & Com.
Code Ann. § 17.46 (Vernon Supp.
2005).  Rainbow’s no-evidence summary judgment
motion alleges that Cartmell presented no evidence raising a fact issue
regarding the commission of any deceptive acts by Rainbow.  Cartmell did not respond with any evidence, but
instead relied upon Arthur Andersen & Co. v. Perry Equipment Corp.
for the proposition that Rainbow’s failure to verify that it ever billed or
collected for Cartmell’s services is evidence that it committed a deceptive act
by representing that it had billed patients when it had not.  945 S.W.2d 812, 815 (Tex. 1997).  In Arthur Andersen, an expert
testified that the auditor had failed to follow accepted procedures, and the
evidence at trial demonstrated that the auditor failed to verify facts
necessary to the audit.  Id.  Nothing in Arthur Andersen suggests
that an allegation of deceptive acts creates a burden on the defendant to prove
that it did not engage in deceptive acts. 
Id.  Allegations in one’s
own pleadings do not constitute competent summary judgment evidence.  Flameout Design & Fabrication, Inc. v.
Pennzoil Caspian, 994 S.W.2d 830, 838 (Tex. App.—Houston [1st Dist.]
1999, no pet.).  Cartmell’s allegation
that Rainbow failed to bill her patients or remit payments to her after it
represented to her that it did, without more, does not constitute evidence that
Rainbow engaged in deceptive acts, so as to raise a fact issue under the DTPA.  Accordingly, we need not address Cartmell’s
other issues regarding her DTPA claim.  See
FM Props. Operating Co., 22 S.W.3d at 872–73.

Conclusion

          Cartmell
failed to present evidence raising a fact issue as to whether Rainbow breached
its alleged agreement with her, or whether it engaged in deceptive acts or
practices.  We therefore hold that
summary judgment was proper as to Cartmell’s breach of contract and DTPA
claims, and affirm the judgment of the trial court.

 

                                                          Jane
Bland

                                                          Justice

 

Panel consists of Justices Taft,
Higley, and Bland.

 











[1] At oral argument, Cartmell’s counsel represented that
this case arises from Rainbow’s failure to properly bill insurance carriers and
patients, and Cartmell does not allege fraud or any intentional withholding of
payments.

 





[2] In her brief, Cartmell alleges that she did not prove
the amounts actually billed and collected by Rainbow in part because Rainbow
shredded documents and refused to allow her access to computer records, during
the course of their pre-suit dealings, and such evidence would demonstrate the amounts
Rainbow billed and paid to her.  Cartmell
presents no evidence, however, that Rainbow improperly withheld responsive
billing documents from discovery—nor did the trial court make such a finding.  Accordingly, Cartmell’s contention that she
failed to produce summary judgment evidence because the necessary documents
were shredded or withheld pre-suit does not raise a fact issue regarding
Rainbow’s billing or remittance of payments.