Opinion issued November 13, 2003













In The
Court of Appeals
For The
First District of Texas




NO. 01-02-01082-CV




MONICA DYSON, Appellant

V.

AMERIGROUP TEXAS, INC. AND AMY WILLIAMS, Appellees




On Appeal from the 61st District Court
Harris County, Texas
Trial Court Cause No. 2001-58744




MEMORANDUM OPINION
           Appellant, Monica Dyson, sued her former employer, Amerigroup Texas, Inc.,
(Amerigroup) and Amerigroup’s president and chief operating officer of the Houston market,
Amy Williams (appellees), for wrongful termination, alleging that she was terminated for
refusing to commit a criminal act. The trial court granted appellees’ motion for summary
judgment, and Dyson brings this appeal, contending that she falls within the Sabine Pilot
exception to the employment-at-will doctrine. We affirm. 
BACKGROUND
           At her deposition, Dyson testified as follows: Dyson began working for Amerigroup
as a human resources assistant in February 2001. After her initial 90-day probationary
period, her probation was extended for an additional 30 days. Her supervisor, Annik
Duncan, told her that time-management was the main issue and the company was going to
enroll her in a one- or two-day time-management seminar. However, Dyson did not attend
the seminar because she was too busy. Dyson began working overtime during the initial 90-day probationary period. At first she did not record the overtime, but, with Duncan’s
encouragement, she started recording it. 
           One of Dyson’s duties was to record time-sheet attendance information in an
attendance binder. On a few occasions, she took the attendance binder home to enter the
information because she was behind in the work. She took the binder home with her in late
July 2001 and did not bring it back to work the next day. At the beginning of August,
Duncan asked Dyson for the binder. When Dyson told Duncan that Dyson had left the binder
at her home, Duncan became upset because she needed it to prepare for an EEOC case. 
Dyson said she would bring the binder back. However, when Dyson got home, she learned
that her children and her boyfriend had inadvertently thrown the binder away. When Dyson
returned to work and told Duncan that the Binder had been thrown away, Duncan said, “I
ought to write you up.” Later, after Dyson explained what had happened, Duncan said, “I
understand completely” and told Dyson to recreate the binder. 
           Another of Dyson’s duties was to collect the employees’ time sheets and send them
by Federal Express to the company’s home office in Virginia Beach, Virginia. If an
employee did not get the weekly time sheet to Dyson on time, that employee was to fax the
time sheet directly to the home office. Employee paychecks were prepared in Virginia Beach
and sent to Dyson, who divided the checks by department and gave the groups of checks to
the department managers for distribution. On the Friday before Duncan discovered the
missing attendance binder, Shawn Alston, who worked in payroll at the home office, called
Dyson to tell her that the time sheet for an employee named Andre Johnson had not been
filled out.


 Dyson responded that they did not have an employee named Andre Johnson. 
Alston told Dyson that the time sheet had been signed by Duncan. The previous week, a
payroll check for Andre Johnson had been included in the checks sent from Virginia Beach
to Houston. When the checks arrived, Duncan had asked Dyson for the Johnson check. 
Dyson assumed that the check was sent to Houston by mistake and that Duncan was going
to correct the error. Dyson went with this information about the time sheet and paychecks
to Dr. Owen Ellington, the medical director of the Houston office, and told him that she
suspected that Andre Johnson was a “phantom employee.” Ellington encouraged Dyson to
investigate the matter. 
           During the next week, Duncan asked Dyson about the attendance binder and learned
that it had been lost. On Wednesday, the paychecks arrived from the home office, and Dyson
asked Ellington what she should do with the check for Andre Johnson. Ellington said, “Just
give it to her. They are going to take care of it.” She gave the check to Duncan. Dyson met
with Duncan again on Thursday and Friday. On Friday, Duncan talked about Andre Johnson
and said, “Don’t you remember him? He’s tall and dark” and “We need to stick together.” 
Duncan tried to get Dyson to say that Andre Johnson existed. 
           On Monday of the following week, Dyson met with Williams, who told her that
Williams and Jasmine Aponte, a human resources associate coordinator in the Fort Worth
office, would investigate the matter. Williams instructed Dyson to be truthful, to tell
everything that she knew, and to give all the information that she had. Aponte interviewed
Dyson and, when Dyson told Aponte that Andre Johnson did not work there, Aponte asked,
“Are you sure?” Aponte asked if Dyson was sure more than once, and Dyson said, “I was
being talked to as if I just lost the file and that he actually worked there.” She also said, “It
was like they wanted me to say that . . . Andre Johnson worked there, and I knew he didn’t. 
I wouldn’t say that he worked there.” However, Duncan was the only person whom Dyson
identified as specifically requesting her to say that Andre Johnson existed and worked for
Amerigroup. 
           The next day, Dyson met with Williams, who told Dyson that she was being
suspended until they determined what was going on. Williams presented Dyson with a paper
for Dyson’s signature. The paper indicated that the suspension was for “Performance
Issues.” Dyson asked, “What performance issues?” and said she had “been getting all kinds
of accolades from managers.” Williams said, “Don’t worry about it. It’s just until we figure
out what’s going on with Andre Johnson.” The following Monday, Williams met with Dyson
and told her that she was being terminated for breach in confidentiality for taking work
home. Dyson told Williams that Williams took work home every two weeks and that
everyone took work home. Williams walked out of the office, and Aponte conducted an exit
interview. 
           Dyson sued appellees for wrongful termination, and appellees filed a motion for
summary judgment, which was granted by the trial court. 
DISCUSSION
           In her sole issue, Dyson contends that her termination comes under the Sabine Pilot
exception to the employment-at-will doctrine, which provides that an employee may not be
terminated for refusing an employer’s request to commit a criminal act. See Sabine Pilot
Serv., Inc. v. Hauck, 687 S.W.2d 733, 735 (Tex. 1985) (holding that discharge of employee
for sole reason that employee refused to perform an illegal act is exception to employment-at-will doctrine). Dyson contends that, after she reported the existence of a “phantom
employee,” she refused her supervisor’s request to recant the report and to acknowledge that
the “phantom employee” was real and was terminated because of that refusal.
Standard of Review
           Under rule 166a(i), a party is entitled to summary judgment if, after adequate time for
discovery, there is no evidence of one or more essential elements of a claim or defense on
which an adverse party would have the burden of proof at trial. Tex. R. Civ. P. 166a(i). 
Thus, a no-evidence summary judgment is similar to a directed verdict. Flameout Design &
Fabrication, Inc. v. Pennzoil Caspian Corp., 994 S.W.2d 830, 834 (Tex. App.—Houston [1st
Dist.] 1999, no pet.). The motion for summary judgment may not be general, but must state
the elements for which there is no evidence. Tex. R. Civ. P. 166a(i). The trial court must
grant the motion unless the nonmovant produces more than a scintilla of evidence that raised
a genuine issue of material fact on each of the challenged elements. See Tex. R. Civ. P.
166a(i); Macias v. Fiesta Mart, Inc., 988 S.W.2d 316, 317 (Tex. App.—Houston [1st Dist.]
1999, no pet.). The party with the burden of proof at trial has the same burden of proof in
the summary judgment proceeding. Galveston Newspapers, Inc. v. Norris, 981 S.W.2d 797,
799 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). In reviewing a summary judgment,
we must indulge every reasonable inference in favor of the nonmovant and resolve any
doubts in its favor. Flameout Design, 994 S.W.2d at 834. 
 

Analysis
           In her second amended petition, Dyson alleged that she was unlawfully terminated by
Amerigroup, through Williams, and by Williams in her individual capacity. Dyson alleged
that she made good faith inquiries regarding the payment of monies to a person whom she
believed was not an employee of Amerigroup and that she failed to commit an illegal act in
that she refused to pay a phantom employee, although requested to do so by the management
of Amerigroup. Dyson further alleged that, “after she made these inquiries and/or failed to
commit an illegal act, she was terminated from her employment with AMERIGROUP for
pre-textual reasons.” 
           Appellees filed a motion for summary judgment, asserting that they were entitled to
judgment as a matter of law under subsections (c) and (i) of rule 166a of the Texas Rules of
Civil Procedure. Appellees contended, among other things, that there was no evidence that
Dyson was required to perform an illegal act and no evidence that she was fired for refusing
to perform an illegal act. 
           In her response to the motion for summary judgment, Dyson asserted “that she refused
to perform an illegal act, to wit, acknowledging that Andre Johnson was an employee of
Defendant Company, thereby allowing the local employees that requested her to identify
Andre Johnson as a ‘real employee’ to avoid criminal charges . . . .” She did not direct the
trial court to any evidence to establish that she was fired for refusing to pay the phantom
employee. 
           Dyson’s duties, as stated in her deposition, did not include “paying” employees. She
collected time sheets and transmitted them to the home office. The payroll department in the
home office prepared the paychecks, which were sent to Dyson, and she forwarded them to
department managers, who distributed them to employees. Dyson produced no evidence that
she was asked to pay Andre Johnson or to deliver a paycheck to Andre Johnson. If mere
delivery of the paycheck to a department manager was the “illegal act” to be performed,
Dyson did not refuse to do it. She delivered the Johnson paycheck to Duncan, as instructed
by Ellington. 
           Although her petition alleged that the required illegal act was paying a phantom
employee, Dyson stated, at her deposition, that the illegal act she was asked to perform was
to verify that Andre Johnson was, in fact, an employee. However, she did not identify
anyone except Duncan who asked her to affirm Johnson’s existence and employment. 
Duncan had no authority to fire Dyson. With regard to Williams, the only person with the
authority to fire Dyson, Dyson stated that she “felt” that Williams and Aponte were trying
to get her to say that Johnson was an employee because they asked her if she was sure. She
produced no evidence to support her feeling and admitted that Williams told her to tell the
truth and to tell everything she knew about the matter.
           Dyson reported Duncan’s involvement in the Johnson time sheets and paychecks and
was encouraged by Ellington to investigate and encouraged by Williams to tell the truth. 
Dyson has presented no evidence that she was asked by her employer to perform an illegal
act by affirming Johnson’s existence or employment. 
           Dyson has not carried her burden under rule 166a(i) to produce more than a scintilla
of evidence that she was terminated for refusing to perform an illegal act. Accordingly, we
overrule Dyson’s sole issue.
           We affirm the judgment.
 
 
                                                                  Sam Nuchia
                                                                  Justice

Panel consists of Justices Hedges, Nuchia, and Higley.