**Opinion issued August 15, 2024**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-23-00151-CV

_____

**STEEL SURPLUS, INC., Appellant**

**V.**

**ADOBE CAPITAL, LLC AND RYAN GREENE, Appellees**

---

**On Appeal from the 125th District Court**
**Harris County, Texas**
**Trial Court Case No. 2022-41177**

---

## MEMORANDUM OPINION

Appellant, Steel Surplus, Inc. ("Steel Surplus"), challenges the trial court's rendition of summary judgment in favor of appellees, Adobe Capital, LLC ("Adobe Capital") and Ryan Greene (collectively, "appellees"), in Steel Surplus's suit against them for breach of contract and fraud. In three issues, Steel Surplus contends that

the trial court erred in granting appellees summary judgment and in refusing to grant it a continuance.

We affirm.

## Background

In its original petition, Steel Surplus alleged that "Adobe Capital [wa]s the purported owner" of a parcel of property on the Eastex Freeway in Houston, Harris County, Texas (the "property") and had "advertised the [p]roperty for sale." Steel Surplus "negotiated and agreed upon a price" for the property with Adobe Capital's agent, Greene. Under the agreement, Steel Surplus was to pay $100,000 in nonrefundable earnest money and a sales price of $5 million, with the closing to occur in sixty days.

Steal Surplus further alleged that a contract was executed consistent with those terms, and Steel Surplus deposited $100,000 with the title company. But then, on July 7, 2022, Greene and Adobe Capital "attempted to renegotiate the contract after it had been accepted."

Steel Surplus brought a claim against appellees for breach of contract, alleging that Adobe Capital had "failed to perform its obligations under the contract." Steel Surplus sought specific performance and requested that the trial court order Adobe Capital "to provide clear title and convey the [p]roperty to [Steel Surplus] at the agreed upon price." Alternatively, Steel Surplus sought compensatory damages for

Adobe Capital's breach of contract. And it sought to recover its attorney's fees.[1]

Steel Surplus also brought a claim against appellees for fraud, and it filed a notice of lis pendens with its original petition.

Appellees separately answered, generally denying the allegations in Steel Surplus's original petition and asserting that Steel Surplus was not entitled to specific performance and its claims were barred by the statute of frauds.[2]

Adobe Capital also brought a counterclaim against Steel Surplus, seeking sanctions against it. According to Adobe Capital, Steel Surplus, in filing its suit and the lis pendens, had "engaged in a course of conduct" that was "untrue and harassing" in violation of Texas Civil Practice and Remedies Code section 10.001.[3] Specifically, Adobe Capital alleged that Steel Surplus falsely stated that it had a "valid contract" with Adobe Capital and had falsely represented to the title company that an earnest money contract had been "signed electronically" by Adobe Capital. The title company had responded to Steel Surplus that it would not accept the earnest money contract "because it had not been signed and initialed by both parties." Adobe Capital also alleged that the lis pendens sworn to by Steel Surplus's president,

---

[1] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001.

[2] *See* TEX. BUS. & COM. CODE ANN. §§ 26.01(a)(1)–(2), 26.02(b)(4).

[3] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 10.001 ("Signing of Pleadings and Motions"). Adobe Capital also invoked Texas Rule of Civil Procedure 13 as a basis for imposing sanctions on Steel Surplus. *See* TEX. R. CIV. P. 13.

Rogerio "Roger" Gomez, falsely stated that Adobe Capital "signed documents and an earnest money contract, for the purchase of [the property]." And Adobe Capital alleged that Steel Surplus was aware of the falsity of its claims, noting that Steel Surplus had "exchanged text messages with [Greene]" on July 6, 2022—six days before Steel Surplus filed its suit and the lis pendens—in which Steel Surplus had stated: "[J]ust forget it we will take it elsewhere" and "we have another piece of property." (Internal quotations omitted.)

Additionally, while noting that six weeks had passed since Steel Surplus had filed its original petition and the lis pendens, Adobe Capital asserted that the lis pendens was invalid because a copy was not served on Adobe Capital by the statutory deadline.[4] And although Adobe Capital had not yet been served with the lis pendens, Steel Surplus nevertheless "refuse[d] to remove it from the Harris County Deed records."

Adobe Capital attached to its counterclaim a copy of the unsigned earnest money contract and copies of pertinent email correspondence between the parties and the title company. It also attached the declaration of its president, Robert Latimer, Jr. In his declaration, Latimer stated that "[o]n behalf of Adobe [Capital],"

---

[4]  *See* TEX. PROP. CODE ANN. § 12.007(d) ("Not later than the third day after the date a person files a notice for record under this section, the person must serve a copy of the notice on each party to the action who has an interest in the real property affected by the notice.").

4

he had contacted Greene, the vice president of JLL Houston Industrial Services ("JLL"), "for assistance in marketing the [p]roperty for lease or sale." Latimer stated that "[n]either [Greene] nor JLL had [the] authority from Adobe [Capital] to commit Adobe [Capital] on any real estate transaction nor to sign any documents on its behalf," and neither had "any ownership interest in the [p]roperty or in Adobe [Capital]."

According to Latimer, "Greene began negotiating with various representatives of [Steel Surplus] and its affiliates about the property" in early June 2022. At first, Steel Surplus sought to lease the property, "but eventually, on or about June 27, 2022, Steel Surplus offered to purchase the property for $5,000,000[]." After informing Adobe Capital about the offer, Greene prepared a proposed earnest money contract using the form commercial contract provided by the Texas Real Estate Commission and "forwarded a copy to Steel Surplus." Latimer also received a copy of the proposed earnest money contract on or about June 30, 2022, but "[n]either Adobe [Capital] nor anyone on its behalf signed th[at] contract." (Emphasis omitted.)

Latimer recounted that Steel Surplus "made significant, material changes" in handwriting on its copy of the proposed earnest money contract before returning it to Greene. Those changes included adding a "specific closing date of November 21, 2022," changing the type of deed required from a special warranty deed to a general

5

warranty deed, and adding a requirement that Adobe Capital "evict all tenants" before the proposed closing date. Latimer received a copy of the marked-up proposed earnest money contract on July 5, 2022, but neither he nor anyone else acting on behalf of Adobe Capital "accepted [Steel Surplus's] material changes."

Absent a signed earnest money contract, Greene "continued to market the [p]roperty" and quickly received an offer from another potential buyer to purchase the property for $6 million. According to Latimer, on July 6, 2022, Greene informed Steel Surplus by email of the new offer, and he invited Steel Surplus to make a counteroffer. Steel Surplus responded, "[F]orget it we will take it elsewhere," and it noted that it "need[ed] a signed contract asap." (Internal quotations omitted.) Steel Surplus then stated: "[L]et me know if it is meant to be if not we did all we could do." (Internal quotations omitted.)

Latimer further stated that on July 7, 2022, Steel Surplus took a copy of the proposed earnest money contract, without its handwritten revisions, to the title company "along with a $100,000[] cashier's check." The title company "refused to accept" the proposed earnest money contract and the cashier's check. On July 9, 2022, the title company "emailed Steel Surplus, sending . . . copies" of the proposed earnest money contract and the cashier's check and informed Steel Surplus that the contract "did not have the [s]eller's initials or signature" and the title company required "a fully executed [c]ontract by [s]eller and [buyer] to open title." According

to Latimer, "[d]espite being informed by [the title company] that there was no fully executed contract," and telling Greene "let's wrap up with a signed contract," Steel Surplus decided to file suit. (Internal quotations omitted.)

Latimer explained that neither he nor any other officer or employee of Adobe Capital had "communicated in any manner with" or "made any representation to" Steel Surplus during the proposed transaction period, and he attested that Adobe Capital "never signed a contract with Steel Surplus for the sale of the [p]roperty."

Adobe Capital then filed a motion for summary judgment, asserting that it was entitled to judgment as a matter of law on Steel Surplus's claims against it. As to Steel Surplus's breach-of-contract claim, Adobe Capital argued that the statute of frauds, codified in Texas Business and Commerce Code section 26.01, barred Steel Surplus's claim because the evidence conclusively proved that "Adobe [Capital] never signed a contract with Steel Surplus."[5] Adobe Capital also asserted that Steel Surplus initially "returned the [proposed earnest money] contract to Greene with multiple changes and additional conditions," and its handwritten material changes to the terms, which included requiring Adobe Capital to evict all tenants and to turn the property over to Steel Surplus immediately after closing, specifying a new closing date of November 21, 2022, and requiring Adobe Capital to provide a general warranty deed as opposed to a special warranty deed, constituted a counteroffer that

---

[5]     *See* TEX. BUS. & COM. CODE ANN. § 26.01.

extinguished Adobe Capital's original offer, and "Adobe [Capital] did not accept th[e] [counter]offer."

As to Steel Surplus's fraud claim against it, Adobe Capital argued that it was entitled to judgment as a matter of law on the claim because Latimer, in his declaration, stated that Adobe Capital "had no contact with Steel Surplus" and had "made no representations to it."[6]

Based on the same grounds set forth in its summary-judgment motion, Adobe Capital also moved to expunge Steel Surplus's lis pendens so that it could "freely market" the property. Further, Adobe Capital argued that the lis pendens was invalid because it was not served on it by the statutory deadline.[7]

In its response to Adobe Capital's summary-judgment motion, Steel Surplus asserted that Adobe Capital was not entitled to judgment as a matter of law on Steel Surplus's claims against it. According to Steel Surplus, although no officer or employee of Adobe Capital had direct contact with Steel Surplus, "Greene, on behalf of Adobe [Capital], negotiated and agreed upon a price and the material terms of the purchase of the [p]roperty." Greene confirmed the agreement in a text message to Steel Surplus," by stating: "[A] sales price of $5,000,000[], a closing date of [sixty]

---

[6]     Adobe Capital attached the declaration of Latimer and accompanying exhibits to its summary-judgment motion.

[7]     *See* TEX. PROP. CODE ANN. § 12.007(d).

8

days later and a nonrefundable earnest money deposit of $100,000 . . . [w]e have a deal." (Emphasis and internal quotations omitted.) With Latimer's approval, Greene then drafted a contract for sale of the property "detailing th[o]se terms," and he provided a copy to Gomez, Steel Surplus's president.

Steel Surplus asserted that those actions created "a valid written contract for the sale of the . . . property . . . and Adobe [Capital] breached that agreement by not signing" the proposed earnest money contract and "refusing to move forward with the sale of the property" to Steel Surplus. According to Steel Surplus, Adobe Capital should not "be rewarded for its wrongful conduct by hiding behind the statute of frauds."

Steel Surplus also asserted that Adobe Capital committed fraud by refusing to sign the proposed earnest money contract and by trying to renegotiate the sales price to $6 million based on a phantom offer from a third party. And Steel Surplus objected to the declaration of Latimer, complaining that the statements in his declaration "[we]re incomplete, lack[ed] supporting proof, [and were] self-serving, conclusory and inherently biased." Finally, Steel Surplus requested a continuance "until such time that the depositions of the principal witnesses," i.e., Gomez, Greene, and Latimer, "c[ould] be taken and further discovery conducted."

Steel Surplus attached to its response the declaration of Gomez. In his declaration, Gomez stated that he had "bec[o]me aware" that Adobe Capital had

9

"marketed and advertised" the property "through its authorized agent, [Greene]." Gomez "instructed [his] office to contact Greene" about a potential lease of the property for Steel Surplus. Later, however, he became "interested in purchasing the property," and his "communications with Greene turned to negotiating the terms of a purchase." Gomez "believed that Greene was speaking for Adobe [Capital] and was authorized by [it] to not only market the [p]roperty but to also consider and enter into agreements with any potential buyer." And Greene never disclosed to Gomez "that he was not acting on behalf of Adobe [Capital] or that he could not act on behalf of Adobe [Capital]." According to Gomez, "[a]fter numerous text[] [messages] between [Steel Surplus's] staff, [Gomez], and Greene" during June 2022, "an agreement was reached whereby [Steel] Surplus would purchase the [p]roperty."

Gomez further stated that he and Greene "agreed upon a price and the material terms of the purchase of the [p]roperty" by Steel Surplus on June 29, 2022. In an email, Greene confirmed to Gomez "a sales price of $5,000,000, a closing date of [sixty] days later[,] and a nonrefundable earnest money deposit of $100,000[]." Greene also sent Gomez a text message stating, "We have a deal." (Internal quotations omitted.) And he informed Gomez "that he was drafting the sales agreement and would send it to [Gomez] once Adobe [Capital]'s owner [had] reviewed it."

10

Gomez further explained that on June 30, 2022, Greene provided Gomez with the proposed earnest money contract for his signature. On behalf of Steel Surplus, Gomez "accepted the contract, signed it and returned it to Greene." Gomez "reasonably presumed that Adobe [Capital]'s owner must have agreed to the [proposed earnest money] contract and its terms as Greene [had] sent [him] the completed sales contract which only needed signatures and the opening of escrow to move forward with the purchase." Gomez "took the signed contract along with the $100,000 earnest money" to the title company, but the title company "refused to accept the earnest money deposit solely because Adobe Capital, contrary to the agreement and Greene's representations," had "refused to sign the contract."

Instead, on July 7, 2022, Adobe Capital, acting through Greene, emailed Gomez to inform him "that Adobe [Capital] had found another buyer for the [p]roperty, only this time for $6,000,000." Adobe Capital then asked Steel Surplus if it "wanted to match or counter" that offer. Gomez "refused and informed Adobe [Capital] that [he] would comply with the terms of the agreement in place and that [Steel] Surplus remained ready, willing and able to fully comply with the agreement in place." But "Adobe [Capital] refused to move forward with the agreement."

In its reply to Steel Surplus's response, Adobe Capital pointed out that Steel Surplus had not alleged or produced a written agreement signed by or on behalf of Adobe Capital, so its breach-of-contract claim was barred by the statute of frauds.

11

Adobe Capital also argued that Steel Surplus's fraud claim failed as a matter of law because "Texas law does not allow a suit for fraud in the inducement to enforce an invalid contract." And Adobe Capital noted that Steel Surplus had judicially admitted in its response that Adobe Capital had not signed any contract for the sale of the property.

Further, Adobe Capital observed that Steel Surplus had failed to address or produce the proposed earnest money contract it had revised and delivered to Greene on July 2, 2022, which "materially changed the terms of the alleged agreement." And Adobe Capital reiterated that the proposed earnest money contract with Adobe Capital's revisions constituted a counteroffer "made by Steel Surplus," which was "not accepted or signed by Adobe Capital or anyone on its behalf."

Greene also filed a motion for summary judgment on Steel Surplus's claims against him, arguing that he was entitled to judgment as a matter of law on the claims because even if there was a valid contract between Adobe Capital and Steel Surplus, which there was not, he was "not a party to any such agreement." Greene explained that he was a real estate broker with JLL and that under an "[a]greement dated April 29, 2022," Adobe Capital had "appointed JLL . . . as its exclusive agent to market the [p]roperty for lease." During the negotiations with Steel Surplus, Greene had been "acting as an agent for a disclosed principal, Adobe [Capital]." Therefore, he could not be held liable for Steel Surplus's claim for breach of contract. And as to

12

Steel Surplus's fraud claim, Greene maintained that as Adobe Capital's agent, he merely passed information from Adobe Capital to Steel Surplus and had "no decision-making authority to either decline or accept offers to purchase the [p]roperty." Thus, Greene asserted that he was "not liable for any misrepresentations made by Adobe [Capital]."

In its response to Greene's summary-judgment motion, Steel Surplus argued that Greene was not entitled to summary judgment as a matter of law on its claims against Greene because he was a proper party and aligned with Adobe Capital. According to Steel Surplus, under Texas Occupations Code section 1101.557(c)(1),[8] Greene was liable because "he had the authority to bind Adobe [Capital] to the agreement with [Steel Surplus] to sell the [p]roperty."

On December 1, 2022, the trial court signed an order granting Greene's summary-judgment motion. On December 7, 2022, Steel Surplus filed a supplemental declaration of Gomez and emergency motion for continuance, which the trial court heard on December 8, 2022, at the hearing on Adobe Capital's summary-judgment motion. The trial court denied Steel Surplus's emergency motion for continuance, noting that the statements in Gomez's supplemental declaration were contradicted by his prior statements before the trial court. Steel

---

[8] *See generally* TEX. OCC. CODE ANN. § 1101.557 ("Acting as Agent; Regulation of Certain Transactions").

13

Surplus also filed another supplemental declaration of Gomez on December 14, 2022.

The trial court signed orders granting Adobe Capital's summary-judgment motion and expunging the lis pendens on December 8, 2022. On December 9, 2022, Adobe Capital nonsuited its counterclaim against Steel Surplus, and the trial court signed an order dismissing the counterclaim on December 14, 2022.

On December 23, 2022, Steel Surplus filed a motion for new trial, which was overruled by operation of law. Despite the trial court having disposed of all claims and parties in the case on December 14, 2022, Steel Surplus filed a first amended petition on January 26, 2023, in which it alleged facts supporting a new fraud claim against appellees and sought damages based on a reliance theory of recovery. Steel Surplus did not file a motion for leave to file its first amended petition.

**Summary Judgment**

In its first and second issues, Steel Surplus argues that the trial court erred in granting summary judgment in favor of appellees on Steel Surplus's claims against them because their summary-judgment evidence was insufficient and other competent evidence showed the existence of disputed material facts.

We review a trial court's decision to grant summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In conducting our

14

review, we take as true all evidence favorable to the non-movant, and we indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Valence Operating*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215. If a trial court grants summary judgment without specifying the grounds for granting the motion, we must uphold the trial court's judgment if any of the asserted grounds are meritorious. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 148 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

To prevail on a matter-of-law summary-judgment motion, the movant must establish that no genuine issue of material fact exists and the trial court should grant judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). When a defendant moves for a matter-of-law summary judgment, it must either: (1) disprove at least one essential element of the plaintiff's cause of action, or (2) plead and conclusively establish each essential element of an affirmative defense, thereby defeating the plaintiff's cause of action. *See Cathey*, 900 S.W.2d at 341; *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). Once the movant meets its burden, the burden shifts to the non-movant to raise a genuine issue of material fact precluding summary judgment. *See Siegler*, 899 S.W.2d at 197; *Transcont'l Ins. Co. v. Briggs Equip. Tr.*, 321 S.W.3d 685, 691 (Tex. App.—Houston [14th Dist.] 2010, no pet.). The evidence raises a genuine issue of fact if "reasonable and fair-minded fact finders could differ in their

15

conclusions in light of all of the summary-judgment evidence." *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007).

Steel Surplus asserts that the "[s]upplemental declarations of [Gomez] filed on December 7, 2022 and December 14, 2022, established all of the elements of [its] fraud claim, which it alleged for the first time in its first amended petition." But neither of of Gomez's supplemental declarations were filed at least seven days before appellees' summary-judgment motions were submitted.[9] In summary-judgment proceedings, the trial court can only consider the pleadings and proof on file at the time of the hearing or filed after the hearing and before judgment with the permission of the court. *See SP Terrace, L.P. v. Meritage Homes of Tex., LLC*, 334 S.W.3d 275, 282 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *Hussong v. Schwan's Sales Enters., Inc.*, 896 S.W.2d 320, 323 (Tex. App.—Houston [1st Dist.] 1995, no writ); *see also* TEX. R. CIV. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."). Here, Steel Surplus did not request

---

[9] *See* TEX. R. CIV. P. 166a(c). The trial court signed its order granting Greene's summary-judgment motion on December 1, 2022, and it signed its order granting Adobe Capital's summary-judgment motion on December 8, 2022. Steel Surplus filed Gomez's first supplemental declaration with its December 7, 2022 emergency motion for continuance of the hearing on Steel Surplus's summary-judgment motion.

16

permission to file any additional summary-judgment proof,[10] and the trial court had already decided the appellees' summary-judgment motions before Steel Surplus filed its first amended petition. As a result, any issues not raised in Steel Surplus's original petition or in its responses to the appellees' summary-judgment motions were not before the trial court and thus are not part of our review. *See Hussong*, 896 S.W.2d at 323.

A matter-of-law summary-judgment motion, though, must stand on its own merits. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000). Because Steel Surplus's issues on appeal are broad enough to challenge the summary judgment on both its breach-of-contract and fraud claims, we consider each claim in turn. *See id.*; *Henriquez v. Cemex Mgmt., Inc.*, 177 S.W.3d 241, 255 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (holding broad "*Malooly*" point sufficient to support contention challenging all possible grounds on which summary judgment rendered, if supported by argument; distinguishing *Malooly Brothers, Inc.*,

---

[10] We also note that the trial court identified discrepancies between the representations made in the declaration of Gomez submitted with Steel Surplus's summary-judgment response to Adobe Capital's summary-judgment motion and those made in his supplemental declarations. Under Texas Rule of Civil Procedure 166a(c), a trial court may conclude that a party does not raise a genuine fact issue by submitting testimony that materially conflicts with the same witness's prior testimony unless the party provides an adequate explanation for the conflict. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 87 (Tex. 2018). Because Steel Surplus did not attempt to explain the discrepancies between Gomez's earlier and later declarations, the trial court could properly have disregarded those statements as not presenting a genuine fact issue. *See id.*

17

461 S.W.2d 119, 121 (Tex. 1970)); *see also* TEX. R. APP. P. 38.1(f) (issue statement "will be treated as covering every subsidiary question that is fairly included"); *St. John Missionary Baptist Church v. Flakes*, 595 S.W.3d 211, 214 (Tex. 2020).

The elements of a breach-of-contract claim are: (1) a valid contract, (2) the party suing to enforce the contract performed or tendered performance, (3) the other party breached the contract, and (4) the suing party was damaged as a result of the breach. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018); *Thornton v. Dobbs*, 355 S.W.3d 312, 316 (Tex. App.—Dallas 2011, no pet.). "A breach occurs when a party fails or refuses to do something [it] has promised to do." *Mays v. Pierce*, 203 S.W.3d 564, 575 (Tex. App.—Houston [14th Dist.] 2006, pet. denied).

As in this case, when the contract at issue is one "for the sale of real estate," the Texas statute of frauds applies. *See* TEX. BUS. & COM. CODE ANN. § 26.01(b)(4). To satisfy the statutory requirements, the contract must be in writing and signed by the person to be charged with the promise or contract or by someone lawfully authorized to sign for him. *Id.* § 26.01(a)(l). Generally, when the contract is a type that comes within the statute of frauds, it is unenforceable if it does not satisfy the statutory requirements. *Dynegy, Inc. v. Yates*, 422 S.W.3d 638, 641 (Tex. 2013).

"The party pleading the statute of frauds bears the initial burden of establishing its applicability." *Id.* "Once that party meets its initial burden, the

18

burden shifts to the opposing party to establish an exception" that would take the unsigned contract out of the statute of frauds. *Id.*

Adobe Capital raised the statute of frauds as an affirmative defense, and in its summary-judgment motion, argued that the proposed earnest money contract was not enforceable as a matter of law because it "had never signed a contract with Steel Surplus." In his summary-judgment motion, Greene asserted that there was no enforceable contract between Steel Surplus and Adobe Capital, and even if there was, he was not a party to it. The summary-judgment evidence conclusively established that no one had signed a copy of the proposed earnest money contract on behalf of Adobe Capital; Steel Surplus admitted as much in its appellant's brief.[11] In its summary-judgment response, Steel Surplus did not show that the proposed earnest money contract fell within a statutory exception that would have taken the unsigned agreement out of the statute of frauds. *See id.* Instead, the undisputed evidence established that the proposed earnest money contract was unenforceable,

---

[11] The undisputed evidence also shows that before Steel Surplus attempted to deliver the unsigned proposed earnest money contract and its cashier's check to the title company, Gomez, on behalf of Steel Surplus, sent a copy of the proposed earnest money contract with handwritten modifications to Adobe Capital. In its summary-judgment motion, Adobe Capital asserted that the modifications sought by Steel Surplus were material changes to the proposed earnest money contract and thus constituted a counteroffer and a rejection of the initial offer set out in the proposed earnest money contract. *See Davis v. Tex. Farm Bur. Ins.*, 470 S.W.3d 97, 105 (Tex. App.—Houston [1st Dist.] 2015, no pet.). Adobe Capital relied on this evidence to explain why there was no signature on behalf of Adobe Capital on the proposed earnest money contract.

19

and that as a result, Steel Surplus's breach-of-contract claim failed as a matter of law.

As to Steel Surplus's fraud claims against appellees, we note that "a plaintiff may not circumvent the statute of frauds by asserting a claim for fraud." *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 837 (Tex. App.—Houston [1st Dist.] 1999, no pet.). "A fraud cause of action is barred by the statute of frauds when the plaintiff seeks to gain the benefit of the bargain that it would have obtained had the contract been performed." *Id.*; *see also Haase v. Glazner*, 62 S.W.3d 795, 800 (Tex. 2001); *Biko v. Siemens Corp.*, 246 S.W.3d 148, 162–63 (Tex. App.—Dallas 2007, pet. denied).

These legal principles and their application here bring us to Steel Surplus's complaints about the admissibility of appellees' summary-judgment evidence and whether conflicts in the evidence made the trial court's granting of summary judgment improper. Specifically, Steel Surplus complains about the declarations of Latimer and Greene, pointing out instances where certain statements made by Latimer, Greene, and Gomez in their various declarations "clearly conflicted with and contradicted one another." The challenged statements addressed issues such as whether Greene had authority to commit Adobe Capital to a sale agreement for the property, whether the parties had "a deal," and communications about a potential buyer that offered $6 million for the property. None of those statements, though,

20

involve material facts; that is, for the reasons expressed above, they do not affect the trial court's summary-judgment rulings in favor of appellees on Steel Surplus's breach-of-contract and fraud claims against them. A fact is "material" and will preclude summary judgment if it affects the outcome of the suit under the substantive law. *Orion Refin. Corp. v. UOP*, 259 S.W.3d 749, 771–72 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *see also Collins v. Guinn*, 102 S.W.3d 825, 834 (Tex. App.—Texarkana 2003, pet. denied). A material fact creates a genuine issue only if a reasonable jury could find the fact in favor of the non-movant party based on that fact. *See Orion Refin. Corp.*, 259 S.W.3d at 772.

Because the undisputed facts before the trial court established that Steel Surplus's breach-of-contract and fraud claims against appellees failed as a matter of law, we hold that the trial court did not err in granting summary judgment in favor of appellees on Steel Surplus's claims against them.

We overrule Steel Surplus's first and second issues.

## Motion for Continuance

In its third issue, Steel Surplus argues that the trial court erred in "not granting [its] requests for continuance on consideration of [a]ppellee[s'] [m]otions for [s]ummary [j]udgment" on its fraud claim because there had not been adequate time for discovery.

21

We review a trial court's order denying a motion for continuance for an abuse of discretion. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). The trial court may order a continuance of a summary-judgment hearing if it appears "from the affidavits of a party opposing the motion that [it] cannot for reasons stated present by affidavit facts essential to justify [its] opposition." TEX. R. CIV. P. 166a(g). When deciding whether a trial court abused its discretion in denying a motion for continuance seeking additional time to conduct discovery, we consider nonexclusive factors including, the materiality and purpose of the discovery sought and whether the party seeking the continuance has exercised due diligence to obtain the discovery sought. *See Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1996) (materiality and purpose); *State v. Wood Oil Distrib., Inc.*, 751 S.W.2d 863, 865 (Tex. 1988) (due diligence).

According to its appellant's brief, Steel Surplus "requested a continuance for additional discovery prior to the [trial court's] hearings on [appellees'] motions for summary judgment as required by [Texas Rule of Civil Procedure] 166a(i)." But rule 166a(i) deals with no-evidence summary-judgment proceedings. Because neither Adobe Capital nor Greene filed a no-evidence summary-judgment motion, rule 166a(i) could not have provided grounds for a continuance. *See* TEX. R. CIV. P. 166a(i).

22

We note that in the trial court Steel Surplus explained that it wanted additional time to conduct discovery into "communications between" appellees "regarding their intentions and affirmative actions to enter into a written contract with Steel Surplus for the property" and information about the "supposed" third party that offered to buy the property for $6 million. But those proposed avenues of inquiry were relevant only to issues raised in Steel Surplus's first amended petition and the supplemental declarations of Gomez, none of which were properly before the trial court when it ruled on appellees' summary-judgment motions. Thus, Steel Surplus did not seek a continuance to discover facts that would have affected the trial court's summary-judgment rulings. *See Orion Refin. Corp.*, 259 S.W.3d at 771–72; *see also Tenneco*, 925 S.W.2d at 647.

Further, as Adobe Capital points out in its briefing, Steel Surplus sent no discovery of any kind to the appellees during the pendency of the case. This shows a lack of due diligence, which is a sufficient ground for the trial court to deny a motion for continuance. *See Wood Oil Distrib.*, 751 S.W.2d at 865.

Accordingly, we hold that the trial court did not err in denying Steel Surplus's motion for continuance.

We overrule Steel Surplus's third issue.

## Conclusion

We affirm the judgment of the trial court.

Julie Countiss
Justice

Panel consists of Justices Kelly, Countiss, and Rivas-Molloy.